**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 07-22818-CIV-LENARD/TORRES

YVONNE SARHAN, by her son and
next friend,

        Petitioner,

vs.

ARTHUR ROTHENBERG, JUDGE,

        Respondent.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner's Emergency Petition to Enforce Writ of Habeas Corpus [D.E. 8] and Respondent's Motion to Dismiss the Amended Emergency Petition to Enforce Writ of Habeas Corpus and Vacate All Orders of the Circuit Court. [D.E. 12]. The case was referred to the undersigned Magistrate Judge for all pretrial matters. [D.E. 3]. After carefully considering the record, the parties' arguments in support and opposition to the pending filings, and for the reasons that follow, the Amended Petition should be Discharged and Denied, and Respondent's Motion to Dismiss should be Granted.

*I.  BACKGROUND*

Dr. Robert Sarhan, on behalf of his mother, Yvonne Sarhan ("Petitioner") filed an Amended Emergency Petition to Enforce Writ of Habeas Corpus and Vacate All Orders of the Circuit Court Due to Fraud, Fraud Upon the Court, Elderly Abuse and Exploitation ("Petition"). [D.E. 8]. According to the Petition, Judge Arthur Rothenberg ("Respondent"), a judge in the probate division of the Eleventh Judicial Circuit for Miami-Dade County, violated

Petitioner's due process rights when he deemed Petitioner incapacitated and appointed her a guardian. Dr. Sarhan further alleges that Respondent acted unlawfully by appointing Enrique Zamora as Petitioner's attorney ad litem while Mr. Zamora was concurrently serving as an attorney for Petitioner's temporary guardian. Dr. Sarhan charges violations of his mother's state and federal constitutional rights. Specifically the Amended Petition seeks:

> 1. The rights of Yvonne Sarhan should be restored [due] to a violation of due process, ineffective assistance of counsel, fraud upon the court and fraud in obtaining this guardianship case.
>
> 2. All orders of the Circuit Court must be vacated [due] to fraud upon the court and fraud in obtaining this guardianship.
>
> 3. All assets should be returned, and all properties returned to the rightful owner, prior to this guardianship ever taking place.

[D.E. 8 at 15]. Additionally, Dr. Sarhan seeks $100,000,000.00 in punitive damages.

Respondent moves to dismiss Dr. Sarhan's Petition for two reasons: (1) Dr. Sarhan lacks standing to assert the legal rights of Petitioner; and (2) the Court has no jurisdiction pursuant to the *Rooker-Feldman* doctrine. Although Dr. Sarhan's Petition should be dismissed on at least one of these grounds, there are other reasons why the Petition must be dismissed.

## II. ANALYSIS

In adjudicating a motion to dismiss, all facts set forth in a plaintiff's complaint or petition like this one are to be accepted as true. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). A complaint will not be dismissed "unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Id.*; *see also Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993)

("[Our] duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff].").

At the outset, we note that *pro se* litigants like Dr. Sarhan are held to less stringent standards than those drafted by an attorney, but that litigant must still meet minimal pleading standards. *Eidson v. Arenas,* 155 F.R.D. 215, 219 (M.D. Fla. 1994). While courts show leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education, this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). In addition, although this Court will give leeway to *pro se* litigants on substantive matters, *pro se* litigants are still required to conform to the procedural rules. *See Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999) (holding that liberal construction does not mean liberal deadlines); *see also Brooks v. Britton*, 669 F.2d 665, 667 (11th Cir. 1982) (holding that *pro se* litigants are required to move timely for an extension of time in order to file a late notice of appeal).

Additionally, in response to a Rule 12(b)(1) motion challenging subject matter jurisdiction, the Court's obligation to scrutinize even a pro se complaint is undeniable. *See, e.g., Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006) (federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1260-61 (11th Cir. 2000) ("Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases. . . . [O]nce a court determines that there has been no grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction."); *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1328 n.4 (11th Cir. 1999) ("A federal court not only has the power but also

the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.").

### A.     *Standing*

As Dr. Sarhan's Petition repeatedly complains, Dr. Sarhan is *not* Petitioner's legal guardian. It would seem to follow that he does not have standing to assert legal rights on her behalf. A plaintiff "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166, 92 S. Ct. 1965, L. Ed. 2d 627 (1972). Dr. Sarhan's Petition appears to be try and raise in part claims on his own behalf when he requests "that this Honorable Court will feel our pain and *how I suffered* and how we all suffered enormously, *to lose everything I worked hard for my whole life, to have to sell my home that I built with my two hands*." [D.E. 8 at 16] (emphasis added). Yet the petition is styled as Petitioner "Yvonne Sarhan, by and through her son and next friend." Robert Sarhan individually is not technically a party to this action.

The arguments raised by the Respondent are thus more appropriately characterized as a challenge to Dr. Sarhan's capacity to sue on his mother's behalf, which is governed in part by Fed. R. Civ. P. 17(b). *See Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 670 (11th Cir. 1991) (children of decedent could not sue on behalf of estate under Rule 17(b) without being declared personal representative of estate under state law; "This is not a question of standing; rather, this issue involves the question of whether [plaintiff] has the capacity to bring this action on behalf of the estate."). Similarly, the fact that Mrs. Sarhan may require the appointment of a guardian in this proceeding also triggers Fed. R. Civ. P. 17(c).

Under these provisions, there is a serious question whether Dr. Sarhan can pursue the relief he seeks to the extent he does so on behalf of his mother, where he alleges that a state court has already appointed someone else to act as his mother's legal guardian. *See, e.g.,*

*Neilson v. Colgate-Palmolive Co.,* 199 F.3d 642, 650 (2nd Cir. 1999) ("only one party may act in a representative capacity with respect to an . . . incompetent [or ward] who comes before the court."); *In re Kjellsen,* 53 F.3d 944 (8th Cir. 1995) (when incompetent person already has a legal guardian, Rule 17(c) does not authorize suit by another person).

But it is doubtful whether either of these claims are appropriately raised on a motion to dismiss, where the Court must take the facts alleged as true under Rule 12. There is thus a conflict in the caselaw as to how a Rule 17 motion should be raised; either through a motion or as a pleading like an answer. *See, e.g., Whelan v. Abell,* 953 F.2d 663, 672 n.7 (D.C. Cir. 1992); *Weissman v. Weener,* 12 F.3d 84, 85 (7th Cir. 1993).

Rather than addressing all these standing/capacity issues here in response to a motion to dismiss, however, it seems prudent to focus on three dispositive issues that can clearly be addressed under Rule 12(b)(1): the absence of any federal habeas jurisdiction, the probate exception to federal diversity jurisdiction, and the *Rooker-Feldman* doctrine.[1]

---

[1] Incidentally, there is another problem with the pending Petition that Dr. Sarhan filed on a pro se basis. Even assuming that he had legal capacity to bring this action on his mother's behalf, it is highly doubtful that he can do so on a pro se basis. He is not a lawyer, and thus cannot ordinarily represent anyone other than himself. This Petition, however, seeks to assert claims on his mother's behalf, which he cannot do without counsel. *See, e.g., Devine v. Indian River County School Board,* 121 F.3d 576, 581 (11th Cir. 1997) (Rule 17(c) "permits authorized representatives, including parents, to sue on behalf of minors, but does not confer any right upon such representatives to serve as legal counsel."); *Tindall v. Poultney High School Dist.,* 414 F.3d 281 (2nd Cir. 2005) (right to proceed pro se does not apply to non-attorney parents who are guardians ad litem of minor children); *Cavanaugh v. Cardinal Local School Dist.,* 409 F.3d 753, 755 (6th Cir. 2005) (same because ordinary pro se rules do not apply); *Mann v. Boatright,* 477 F.3d 1140, (10th Cir. 2007) (affirming order that dismissed claims filed on behalf of pro se plaintiff's father; "It goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected."). But again, though the Court could clearly now Order the dismissal of this action filed on his mother's behalf by Dr. Sarhan acting pro se, we will not recommend that relief now because such a dismissal could arguably be cured by Dr. Sarhan retaining counsel and filing an amended Petition. The habeas, probate jurisdiction and *Rooker-Feldman* issues, however, are dispositive and cannot be so easily cured.

### B.     *There is No Federal Habeas Jurisdiction*

The pending Amended Petition is styled as an "Emergency Petition to Enforce Writ of Habeas Corpus . . . ." [D.E. 8 at 1]. The arguments raised in the Petition are largely ones that challenge the findings and orders entered by the Circuit Court Judge administering the guardianship proceedings involving Yvonne Sarhan. As the argument headings reveal, Dr. Sarhan is seeking habeas relief in federal court to correct an "error" by the Circuit Court in denying his petition to vacate a March 2006 Order [*Id.* at 12], as well as an error by the Circuit Court in allowing the guardian to apply for fees without notice to Robert Sarhan [*Id.* at 14]. The Petition reads, in fact, as an appellate brief that was likely filed before the Third District Court of Appeal in the underlying guardianship case, which proved unsuccessful. The Petition concludes that this United States District Court hear the case and "rule in favor of Yvonne Sarhan, and stop the abuse that is taking place in this case, return all of our money and vacate all orders of the Circuit Court." [*Id.* at 5].

On its face, therefore, this Petition is seeking habeas corpus collateral review by a federal court of the Miami-Dade Circuit Court decision. Although not cited in the Petition, Dr. Sarhan is arguably seeking relief under 28 U.S.C. § 2254(a):

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

It is very well established, however, that the federal habeas statute cannot be applied to circumstances like these. The Court's habeas jurisdiction is limited to those where a person has been confined by the state largely due to criminal convictions. Federal habeas relief is not available to remedy or challenge state court judgments involving parental relationships, termination of parental relationships, or, as in this case, guardianship proceedings. *See, e.g.,*

*Wales v. Whitney,* 114 U.S. 564, 571, 5 S. Ct. 1050, 1053 (1885); *Lehman v. Lycoming County Children's Serv. Agency,* 458 U.S. 502, 515-16 102 S. Ct. 3231, 3239-40 (1982); *Hemon v. Office of Public Guardian,* 878 F.2d 13, 15 (1st Cir. 1989).

In an oft-cited explanation of the limited scope of a federal court's habeas power, the Supreme Court in *Wales* explained:

> *The writ of habeas corpus is not a writ of error*, though in some cases in which the court issuing it has appellate power over the court by whose order the petitioner is held in custody, it may be used with the writ of certiorari for that purpose. In such case, however, as the one before us, it is not a writ of error. Its purpose is to enable the court to inquire, first, if the petitioner is restrained of his liberty. *If he is not, the court can do nothing but discharge the writ.*

114 U.S. at 571, 5 S. Ct. at 1053 (emphasis added).

What this means is that "although the scope of the writ of habeas corpus has been extended beyond that which the most literal reading of the statute might require, the Court has never considered it a generally available federal remedy for every violation of federal rights. Instead, past decisions have limited the writ's availability to challenges to state-court judgments in situations where – as a result of a state-court criminal conviction – a petitioner has suffered substantial restraints not shared by the public generally. In addition, in each of these cases the Court considered whether the habeas petitioner was "in custody" within the meaning of § 2254." *Lehman,* 458 U.S. at 510, 102 S. Ct. at 3236-37.

Consequently, in a very analogous case, the Supreme Court in *Lehman* held that the writ of habeas corpus had no application to a petition that challenged a state court's order terminating the parental rights of a parent, which order placed the children in a foster home. The argument was raised there that the state court's orders were tantamount to involuntary custody, but the Court rejected that argument. *Id.* "The 'custody' of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal

habeas. Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights." *Id.* at 511, 102 S. Ct. At 3237.

Certainly the same can be said for a habeas petition that seeks to challenge a state court's guardianship order. The Circuit Court here has impliedly placed Mrs. Yvonne Sarhan in the custody of her court-appointed guardian. But that order does not literally mean, for habeas purposes, that she is in the custody of the state court or a state actor. Therefore, the "in custody" requirement of section 2254 cannot be satisfied. And, as in *Lehman,* for the Court to intervene in the adjudication of the guardianship matter – an area traditionally left to state courts – would indeed be a major exception to the doctrine of res judicata and federalism, which exceptions are only reserved "for those instances in which the federal interest in individual liberty is so strong that it oughts federalism and finality concerns." *Id.* at 516, 102 S. Ct. at 3240. In short, the writ of habeas corpus is not a writ of error through which the Court can conclude that the Circuit Court committed the errors alleged in the Petition. *See Wales,* 114 U.S. at 571-72, 5 S. Ct. at 1053-54.

For these reasons, as the First Circuit Court of Appeal held in *Hemon v. Office of Public Guardian,* a writ of habeas corpus cannot be applied to correct errors in judgment by state courts adjudicating guardianship proceedings. 878 F.2d at 14-15. In that case, that involved facts similar to those raised here, the Court followed by analogy the Supreme Court's decision in *Lehman*:

> The reasoning that informed the *Lehman* and *Sylvander* decisions applies with full force in this case. It is true that those decisions dealt with child custody, not guardianship of adults. However, the same concerns about federalism and finality that counsel against federal habeas jurisdiction over child custody disputes also counsel against federal habeas jurisdiction over disputes regarding guardianship. The long-standing policy of the federal courts to avoid interference in state domestic relations

> disputes – for example, by abstaining from asserting federal subject matter jurisdiction over domestic relations matters, . . .– is not limited to the area of child custody, but extends to the entire field of domestic relations. . . . Disputes regarding guardianship are no less matters of purely local concern than are child custody disputes. Accordingly, the federal interest in guardianship matters is no more substantial than the very weak federal interest in child custody matters found insufficient in *Lehman* and *Sylvander* to justify federal habeas jurisdiction.

*Id.* at 15 (citing *Lehman* and *Sylvander v. New England Home for Little Wanderers,* 584 F.2d 1103 (1st Cir. 1978)).

It is evident, therefore, that a Petition such as this one cannot be adjudicated in federal court under the Court's habeas jurisdiction. Although the state-appointed legal guardian has control over Mrs. Sarhan and her affairs, that is not enough to satisfy the "in custody" requirement of the habeas statute. The Court has found no authority to the contrary in a guardianship case like this one. Therefore, as per *Wales, Lehman,* and *Hemon,* this Petition should be discharged and dismissed because the Court lacks habeas corpus jurisdiction over the issues raised regarding Mrs. Sarhan's guardianship.

### B. <u>Lack of Jurisdiction Based on Probate Exception</u>

Even if one treats the Petition as something other than a habeas petition, and considers the substance of most of the arguments in the Petition, jurisdiction would still be lacking. The Petition claims that the parties in the state guardianship proceeding engaged in "fraud upon the court," "elderly abuse," and violations of several Florida statutes. These arguments raise primarily issues of Florida tort and statutory law. But the Petition has not alleged that diversity jurisdiction exists under 28 U.S.C. § 1332. And, as Dr. Sarhan and Judge Rothenberg are Florida residents, it is obvious that he could not have made such an allegation.

Thus, based upon the absence of habeas jurisdiction and the lack of diversity between the parties, this Court has no subject matter jurisdiction over these claims and these parties.

But, again, even if one ignores the lack of diversity jurisdiction as well, yet another federal doctrine would preclude jurisdiction here. Dr. Sarhan's Petition is barred by the doctrine that excepts from federal jurisdiction certain probate and domestic-relations cases. The long-established probate exception to federal jurisdiction precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. *Marshall v. Marshall*, 547 U.S. 293, 298-99, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006); *Markham v. Allen,* 326 U.S. 490, 494, 68 S. Ct. 296, 298, 90 L. Ed. 256 (1946).

This jurisdictional principle exists because adversary proceedings involving domestic-relations or probate, such as child-custody proceedings, proceedings to resolve disputes over the administration of a decedent's estate, or, as in this case, the estate of a living person who is incompetent to manage her affairs, are *in rem* in character. *See Struck v. Cook County Public Guardian*, 508 F.3d 858, 859-60 (7th Cir. 2007). Essentially, they are disputes over a property or person in the court's control. *Id.* at 860. And a court other than the one that controls the *res* (in this case Yvonne Sarhan) should not exercise jurisdiction and meddle in that dispute. *See Marshall*, 547 U.S. at 311 ("When one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*"); *see also Struck*, 508 F.3d at 860 ("So the 'exception' is akin to a doctrine of abstention. . . . They are fights over a property or a person in the court's control. And a court other than the one that controls the res – the property in the decedent's estate – should not be permitted to elbow its way into a fight.").

The Seventh Circuit's recent decision in *Struck* is virtually on all fours with this case and is highly persuasive. There a plaintiff appealed the district court's dismissal of his suit on jurisdictional grounds. That plaintiff's initial complaint, filed in state court, sought revocation of his mother's guardianship because his mother was allegedly mistreated by her

guardian. After the state court rejected his claim, the plaintiff, like Dr. Sarhan, filed suit in federal court alleging violations of both his and his mother's constitutional rights. Judge Posner's decision in *Struck* held that the federal court lacked jurisdiction to hear the case because of the probate exception. *See Struck*, 508 F.3d at 859-60.

Judge Posner distinguished those facts from those in *Marshall*, where the Supreme Court refused to apply the probate exception to not deprive a bankruptcy court of jurisdiction over a widow's claim that her step-son tortiously interfered with her expectancy of an inheritance from her deceased husband. *Marshall*, 547 U.S. at 315, 126 S. Ct. 1735. But the plaintiff widow there was seeking a judgment against the stepson personally, not against the estate of her late husband. The estate was not a party to the action, the state court judge was not named as a defendant, and the state court's adjudication of the estate was not a dispositive issue in the case.

This case, as in *Struck,* is very different. By the Petition's own allegations, the *res* – Dr. Sarhan's mother – is currently in the control of the guardian appointed by the state court, and Dr. Sarhan's right of access to his mother and to her assets are "at the heart of the guardian's responsibilities and are supervised by the court that appointed him." *Struck*, 508 F. 3d at 860. Dr. Sarhan cannot remove into the federal court the *res* over which a state court is currently exercising control. Yet, his pending Petition is asking the Court to grant that very type of relief. Dr. Sarhan seeks an Order vacating Judge Rothenberg's orders and ordering the return of all property in the guardian's control. We thus must refuse to wrest the *res* from the probate judge or the court-appointed guardian for any of the reasons cited in the Petition.

The Eleventh Circuit cases interpreting the probate exception, which largely pre-dated the *Marshall* decision, do not compel a different result. In each of the cases where the Court held that the probate exception was very limited, the suits in question were collateral to the

underlying state court action, unlike this one. This case presents the very type of situation that the Eleventh Circuit envisioned for the application of the probate exception. *See, e.g., Michigan Tech Fund v. Century Nat'l Bank of Broward,* 680 F.2d 736, 739 (11th Cir. 1982) (suit against estate personal representative not barred by exception because "it would not unduly interfere with the state probate proceeding, and would not result in the assumption of general probate jurisdiction or of control over the property in the custody of the state court."); *Glickstein v. Sun Bank,* 922 F.2d at 673-74 (probate exception did not apply to state tort claims raised against personal representative of estate by nonresident beneficiaries where validity of will was already finally resolved by the state court).

Significantly, this is not a case where Dr. Sarhan was claiming that the legal guardian was legally liable for damages. Indeed, Mrs. Sarhan's legal guardian is not a party to this action. This is instead an action against the state court judge that adjudicated the guardianship matter because of disagreement with how that court dealt with the case. These circumstances present textbook examples requiring application of the probate exception as to any state law claims that arise from this Petition. *See also Jones v. Brennan,* 465 F.3d 304, 307-08 (7th Cir. 2006) (claims against probate court over treatment of probate estate barred by probate exception; claims against guardians of estate for mismanagement not barred by rule); *Wisecarver v. Moore,* 489 F.3d 747, 751 (6th Cir. 2007) ("the principles underlying the probate exception are not implicated when federal courts exercise jurisdiction over claims seeking *in personam* jurisdiction based upon tort liability"); *Lefkowitz v. Bank of New York,* 2007 WL 1839756, at *4 (2nd Cir. 2007) (probate exception barred claims "about the maladministration of her parent's estate, which have been proceeding in probate courts" but not those personal damage claims that did not require redistribution of estate assets).

Under the weight of much persuasive authority dealing with Petitions like Dr. Sarhan's, it is evident that any such non-habeas state law claims are not within this Court's jurisdiction. The Court lacks diversity jurisdiction to hear them, and regardless they require a review of the work that the probate judge has been engaged in over Mrs. Sarhan's guardianship proceeding, a redistribution of the assets belonging to the guardianship res, and direct interference with a pending matter in state court. The probate exception squarely applies to bar these claims.

### C.     *Rooker-Feldman Doctrine*

Finally, if one puts aside all these obstacles to subject matter jurisdiction, yet another doctrine would apply requiring the dismissal of this Petition. Under the *Rooker-Feldman* doctrine, a United States District Court lacks subject matter jurisdiction to review final judgments of a state court. *District Court of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Put another way, a lower federal court lacks subject matter jurisdiction in a claim where "the relief requested ... requires determining that the state court's decision is wrong or ... [requires voiding] the state court's ruling." *Industrial Communications and Electronics, Inc. v. Monroe*, 134 Fed. Appx. 314, 317 (11th Cir. 2005) (citing *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003)). The Supreme Court has repeatedly reenforced this narrow but important limitation on a federal district court's power: a suit that essentially invites a federal district court to review and reverse an unfavorable state court judgment is properly dismissed for want of subject matter jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

This doctrine is premised upon two statutory bases of federal jurisdiction: 28 U.S.C. § 1257, which limits federal review of state court proceedings to the Supreme Court, and 28 U.S.C. § 1331, which provides that federal district courts are courts of original jurisdiction.

*Powell v. Powell*, 80 F.3d 464, 466 (11th Cir. 1996). The doctrine bars federal district courts from engaging in appellate review of state court decisions; review of such decisions may be had only in the United States Supreme Court. *Id.* As the Fourth Circuit put it:

> A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, "amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court."

*American Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (internal citation omitted). Rather, a litigant who believes he or she has been wronged by a state court ruling must appeal the decision through the state appellate court and then proceed to the United States Supreme Court. *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1339 (S.D. Fla. 1999).[2]

The pivotal inquiry in determining the applicability of *Rooker-Feldman* is "whether the relief requested of the federal court would effectively reverse or void the state court's ruling." *Bosdorf*, 79 F. Supp. 2d at 1339. If the federal court's decision on an issue requires a

---

[2] Respondent's argument that this case is governed by the Full Faith and Credit Act, 28 U.S.C. § 1738, is misplaced. When there is parallel state and federal litigation, the district court does not necessarily lack jurisdiction; it merely has to consider whether the state court's conclusion governs under principles of claim or issue preclusion, i.e. res judicata or collateral estoppel. *E.g., Exxon Mobil,* 544 U.S. at 293 ("Preclusion, of course, is not a jurisdictional matter ... federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court."). Res judicata and collateral estoppel are clearly inapplicable in this federal lawsuit because Respondent was not a party to the state court case—he was the judge. *See, e.g., Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) (a judgment in a prior action bars a subsequent action only if the parties are identical in both suits).

Similarly, *Rooker-Feldman* must not be confused with abstention, though both doctrines have the similar characteristic of prohibiting federal court review of state court actions. The abstention doctrine found in *Railroad Commission of Tex. v. Pullman Co.,* 312 U.S. 496, 500-01, 61 S. Ct. 643, 85 L. Ed. 971 (1941), and its progeny requires federal courts to refrain from determining the constitutionality of an ambiguous state law before state courts have had the opportunity to interpret the statute. *Id.* at 501 ("[T]he federal courts, 'exercising a wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments'") (citations omitted). That doctrine per se does not apply here.

determination that a prior state court judgment was wrong, then the action is properly characterized as an appeal and the federal court cannot hear the case. *Id.*; *see Exxon Mobil*, 544 U.S. at 284 (reiterating that *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). The doctrine applies not only to claims presented or adjudicated in state court, but also to claims that are "inextricably intertwined" with a state court judgment. *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000). A federal claim is inextricably intertwined with a state court judgment if it "succeeds only to the extent that the state court wrongly decided the issues before it." *Id.*

Respondent argues that "all the conditions exist" for the court to dismiss this case on jurisdictional grounds pursuant to *Rooker-Feldman*. Dr. Sarhan argues to the contrary that he appealed the probate court's order denying his motion to remove his mother's guardian, so there is no state court judgment to give rise to *Rooker-Feldman* in this case. But a review of the Florida Third District Court of Appeal Docket reveals that Dr. Sarhan filed an appeal of the probate court's decision, that the state court decision was affirmed per curium, and that a motion for rehearing was also denied.[3] The Court can clearly take judicial notice of the records of the state court system, which undeniably show that the appeal of the probate court's order is now final. *See, e.g., Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003) (factual attacks on subject matter jurisdiction allow district court to consider extrinsic evidence); *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) (factual attack on subject matter jurisdiction may be decided based upon extrinsic evidence like matters of public record).

---

[3] Final Probate Notice for *Robert Sarhan v. H. Vicki Brail, et al.*, No. 06-2107 (Fla. 3d DCA 2006), http://199.242.69.70/pls/ds/ds_docket (last visited February 12, 2008).

Admittedly, a final disposition of a state probate court's adjudication does not automatically trigger *Rooker-Feldman* if the Petition is not "inextricably intertwined" with the state court judgment. *Siegel*, 234 F.3d at 1172. But the remedy sought in this Petition is clear:

> [W]e do ask for this Honorable Court to rule in favor of Yvonne Sarhan, and stop the abuse that is taking place in this case, return all of our money and vacate all orders of the Circuit Court.

[D.E. 8 at 5]. Because the Petition "succeeds only to the extent that the state court wrongly decided the issues before it," *Siegel*, 234 F.3d at 1172, Dr. Sarhan's vague federal claims are inextricably intertwined with the state court judgment. Accordingly, under *Rooker-Feldman*, we have no jurisdiction to hear the case.

As was the case in the Seventh Circuit's probate exception decision, *Struck v. Cook County Public Guardian,* there is also persuasive precedent for the application of the *Rooker-Feldman* jurisdictional doctrine to a guardianship proceeding. The Tenth Circuit's recent decision in *Mann v. Boatright,* 477 F.3d 1140 (10th Cir. 2007), stands squarely for the proposition that a pro se litigant in Dr. Sarhan's position cannot obtain a do-over in federal court against the judges and interested persons in a state court guardianship proceeding that has been finally adjudicated. The Court relied primarily on the *Rooker-Feldman* doctrine:

> To [petitioner] this means that having lost in probate court, she cannot file a federal complaint seeking review and reversal of the unfavorable judgment. Even if the probate court's decision was wrong, that does not make its judgment void, but merely leaves it "open to reversal or modification in an appropriate and timely appellate proceeding." . . . Nearly all of [petitioner's] claims against the individual defendants assert injuries based on the probate court's judgments and, for her to prevail, would require the district court to review and reject those judgments. As such, her claims are inextricably intertwined with the probate court judgments and are therefore barred by the *Rooker-Feldman* doctrine.

*Id.* at 1146-1147 (quoting *Exxon-Mobil*, 544 U.S. at 284, 125 S. Ct. 1517).

The very same type of claims raised in *Mann* have been raised here, over the same type of guardianship proceeding that was finally adjudicated in state court, and against the same defendant – the state court probate judge. Whatever merit Dr. Sarhan's claims may have, they are left for the Third District Court of Appeal or the Florida Supreme Court to decide. And if those state appellate courts fail to grant him the relief he seeks, Dr. Sarhan's sole remedy is to proceed by way of certiorari to the United States Supreme Court, as per 28 U.S.C. § 1257. This District Court, however, has no power to consider whether Dr. Sarhan was right and whether Judge Rothenberg's judgments should be vacated or voided, as per 28 U.S.C. § 1331. The *Rooker-Feldman* doctrine, therefore, requires the dismissal of his Petition.

\* \* \*

### III.  CONCLUSION AND RECOMMENDATION

Based upon a thorough review of the record and the motions filed by the parties, we hereby **RECOMMEND**:

1. Petitioner's Amended Emergency Petition to Enforce Writ of Habeas Corpus [D.E. 8] should be **DISCHARGED AND DISMISSED FOR LACK OF JURISDICTION**.

2. Respondent's Motion to Dismiss the Amended Emergency Petition [D.E. 12] should be **GRANTED IN PART**.

3. The parties shall have ten (10) days from this date within which to file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of any issue included in the Report and shall bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677

F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1); S.D. Fla. Local Mag. R. 4(b).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 19th day of February, 2008.

_____
EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
Honorable Joan A. Lenard

All Counsel of Record

Robert Sarhan, M.D.
22795 S.W. 212 Ave.
Miami, FL 33170